# UNITED STATES DISTRICT COURT
District of Kansas

UNITED STATES OF AMERICA,

Plaintiff,

v. CASE NO. 11-20012-01-KHV

CODY M. JUSTICE,

Defendant.

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTIONS TO VACATE SENTENCE
(Docs. 42 & 50)

APPEAR NOW the United States of America, by and through Jared S. Maag, Assistant United States Attorney, and in response to the defendant's motions to vacate his sentence, (Docs. 42 & 50, *Mot. to Vacate Sentence*, pp. 1-43; *Joint Mot. to Lift Stay*, pp. 1-25), submits the following:

I. PROCEDURAL HISTORY

On February 23, 2011, the defendant was charged with a single count of possessing a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1). (Doc. 1, *Indictment*, pp. 1-3.)

On April 26, 2011, the defendant entered a guilty plea, without an agreement, to the charged offense. (Doc. 18, *Plea Petition*, pp. 1-8.)

In anticipation of sentencing a Presentence Investigation Report ("*PIR*") was prepared. (Doc. 21, *PIR*, pp. 1-20.) The defendant's base offense level was calculated at 22, based in part on a prior conviction for robbery which was considered a felony crime of violence. (*Id.*, p. 6 ¶ 19, p. 9 ¶ 36.) An additional eight points were given for possession of a firearm with an obliterated serial number, U.S.S.G. § 2K2.1(b)(4), and possession of a firearm in connection with a felony offense, U.S.S.G. § 2K2.1(b)(6). (*Id.*, p. 6 ¶¶ 19-22.) Following the appropriate reductions pursuant to U.S.S.G. § 3E1.1, the defendant's total offense level was calculated at 27. (*Id*. p. 6 ¶¶ 25-30.) The defendant amassed 6 criminal history points, thus establishing a criminal history category of III. (*Id*., p. 10 ¶ 39.) The defendant's resulting guideline range for imprisonment was 87 to 108 months. (*Id*., p. 13 ¶ 63.)

On June 7, 2010, the defendant was sentenced to a controlling term of 108 months. (Doc. 25, *Judgment*, p. 2.)

On May 30, 2012, the United States Court of Appeals for the Tenth Circuit affirmed the defendant's sentence. *United States v. Justice*, 679 F.3d 1251 (10th Cir. 2012).

On June 17, 2016, the defendant filed a motion to vacate his sentence arguing that his prior state conviction for robbery no longer qualifies as a predicate crime of violence under U.S.S.G. § 4B1.2—in turn preventing enhancement of the base offense level under U.S.S.G. § 2K2.1—in the wake of the Supreme Court's decision in *Johnson v. United States*, 576 U.S. ---, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015). (Doc. 42, *Motion to Vacate*, pp. 14-42.)

On July 14, 2016, this Court issued an Order, (Doc. 48, *Order*, p. 1), staying this matter until issuance of an opinion by the Supreme Court of the United States in the case of *Beckles v. United States*, No. 15-8544 (argued Nov. 28, 2016.)

On December 19, 2016, the defendant moved this Court to lift the stay order. (Doc. 50, *Joint Mot. to Lift Stay*, pp. 1-25.) This Court subsequently issued an Order removing the stay and setting a response deadline for the government of January 20, 2017. (Doc. 41, *Order*.)

## II. ARGUMENT

The government maintains that *Johnson*, *supra*, cannot be applied retroactively to the federal sentencing guidelines. Consequently, the defendant's motions to vacate his sentence must ultimately fail on this ground alone.

Secondly, the defendant's argument that his prior conviction for robbery can no longer be considered a crime of violence fails on its own merits. Thus, for the

following reasons, the defendant's motions to vacate his sentence must be overruled.

III. *Johnson* does not retroactively apply to Guidelines sentences.

A. This Court should decline to apply *Johnson's* rule retroactively in the instant case because *Johnson* does not apply retroactively on collateral review of Guidelines sentences, as opposed to statutorily-based sentences, such as those imposed under ACCA, and the defendant received a Guidelines sentence.

In *Johnson*, the Court held that the residual clause defining a "violent felony" in the ACCA, 18 U.S.C. § 924(e)(2)(B), is unconstitutionally vague and therefore void. *Johnson* 135 S. Ct. at 2557. In the subsequently related case of *Welch v. United States*, 578 U.S. ---, 136 S.Ct. 1257, 194 L.Ed.2d 387 (2016), the Court held that this new rule of constitutional law is retroactive in *all* ACCA cases—those pending on direct review as of the date *Johnson* was decided, as well as those that were final before that date that are challenged on collateral review. *Welch*, 136 S. Ct. at 1264-65.

This case, by contrast, involves a collateral attack challenging the use of the residual clause in § 4B1.2(a)(2), and by implication § 2K2.1(a)(2), in the Guidelines' definition of a "crime of violence," to enhance a Guidelines sentencing range. The retroactive character of *Johnson* in ACCA cases on collateral review does not govern the separate question of whether *Johnson* applies retroactively to the Guidelines. While the application of *Johnson* to the ACCA is a substantive change in the law

because it necessarily alters the statutory range of permissible sentences, the application of *Johnson* to the Guidelines' residual clause produces *procedural* changes in the sentencing process that are not retroactive on collateral review.

The government agrees that *Johnson*'s holding that the ACCA's residual clause is invalid applies to the identically worded residual clause in § 4B1.2(a)(2). The government has advocated that position in post-*Johnson* Guidelines sentencing proceedings and in cases pending on direct review as of the date *Johnson* was decided. *See Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) (holding that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final").

But, as the Court's opinion in *Teague v. Lane*, 489 U.S. 288 (1989), explains, different—and more restrictive—retroactivity principles govern when a defendant seeks to undo a final judgment on the basis of an intervening decision. Under *Teague* and its progeny, courts generally refuse to apply (or announce) new rules of criminal procedure for the first time in cases on collateral review. *Teague*, 489 U.S. at 311. Yet in order to grant collateral relief in a Guidelines case based on *Johnson*, this Court would have to announce or apply two new rules that were not established before *Johnson:* (1) that the Guidelines' residual clause is unconstitutionally vague, and (2) that due process vagueness principles apply to the Guidelines.

Although the government agrees that both of these propositions represent the law after *Johnson*, neither proposition was dictated by the law as it existed before *Johnson*. And because these two propositions involve matters of sentencing procedure, the Court, consistent with *Teague*, should not recognize and apply them in a collateral challenge to a Guidelines sentence that was final before *Johnson*, such as defendant's sentence. In sum, *Johnson* applies retroactively in all ACCA cases and in Guidelines cases on direct review, but it does not apply retroactively in Guidelines cases that were final before *Johnson* was announced, whether they be presented in initial or successive § 2255 petitions.

1. Under *Teague*, substantive rules apply retroactively on collateral review, but new procedural rules almost invariably do not.

Under the Court's retroactivity analysis set forth in *Teague*, new rules of criminal procedure do not apply retroactively to cases that became final before the decisions announcing those rules were issued. *Teague*, 489 U.S. at 310; *see also Stringer v. Black*, 503 U.S. 222, 228 (1992) (referring to the "interests in finality, predictability, and comity underlying our new rule jurisprudence").[1] The *Teague*

1 *Teague* involved a state prisoner who sought a writ of habeas corpus under 28 U.S.C. § 2254(a), and the plurality's reasoning referred to the interests in federal-state comity as well as finality. 489 U.S. at 308. The courts of appeals have uniformly held, however, that finality interests alone suffice to render *Teague* applicable to federal prisoner collateral attacks. *See, e.g., Duncan v. United States*, 552 F.3d 442, 444 n.2 (6th Cir. 2009); *Lloyd v. United States*, 407 F.3d 608, 611 (3d Cir. 2005); *United States v. Sanchez-Cervantes*, 282 F.3d 664, 667 (9th Cir. 2002); *United States v. Martinez*, 139 F.3d 412, 416

defense "is not 'jurisdictional' in the sense that [federal courts] . . . must raise and decide the issue *sua sponte*," *Collins v. Youngblood*, 497 U.S. 37, 41 (1990), but where (as here) the government asserts a *Teague* defense, "the court *must* apply *Teague* before considering the merits of the claim." *Caspari v. Bohlen*, 510 U.S. 383, 389 (1994) (emphasis in original).

A *Teague* analysis involves three questions. The first question is whether the defendant is seeking to benefit from a "new" rule. After all, *Teague* was designed to safeguard the threat to finality that is posed by applying rules "not in existence at the time a conviction became final." 489 U.S. at 309. If the rule is new, then the second question is whether the rule is "procedural" as opposed to substantive. If the rule is both new and procedural, *Teague* bars the courts from announcing or applying the rule retroactively in cases on collateral review unless—as a third question—the rule falls within a narrow exception permitting the retroactive application of "watershed" rules of criminal procedure, *i.e.*, rules on par with *Gideon v. Wainwright*, 372 U.S. 335 (1963). *See Teague*, 489 U.S. at 311.

---

(4th Cir. 1998); *Daniels v. United States*, 254 F.3d 1180, 1194 (10th Cir. 2001) (en banc); *Van Daalwyk v. United States*, 21 F.3d 179, 180 (7th Cir. 1994). Although the Supreme Court has not decided that issue, in *Danforth v. Minnesota*, 552 U.S. 264 (2008), it noted that body of lower court precedent and explained that much of the reasoning applicable to petitions under Section 2254 is "equally applicable" to motions under Section 2255. *Id.* at 269 n.4.

a. “New” Rules

Whether a rule is “new” depends on whether “all reasonable jurists” would have felt compelled by precedent existing at the time the defendant’s conviction became final to adopt the rule. *See Chaidez v. United States*, 133 S. Ct. 1103, 1107 (2013); *see also Sawyer v. Smith*, 497 U.S. 227, 234 (1990) (“The principle announced in *Teague* serves to ensure that gradual developments in the law over which reasonable jurists may disagree are not later used to upset the finality of state convictions valid when entered.”). Thus, if reasonable jurists could disagree on whether a rule was compelled by prior precedent, then the rule is “new.” *Id*.

A rule can be new in either of two ways: it can involve a request by a defendant that the court break new ground and adopt, in the defendant’s own case, a previously unrecognized (or previously rejected) legal rule, or it can involve a request by a defendant that the court extend an existing precedent in a novel manner. *See Stringer*, 503 U.S. at 228. Both circumstances implicate *Teague*’s animating concern: “validat[ing] reasonable, good faith interpretations of existing precedents made by [lower] courts even though they are shown to be contrary to later decisions.” *Butler v. McKellar*, 494 U.S. 407, 414 (1990).

b. Procedural Versus Substantive Rules

*Teague* does not apply to all new rules; rather, the doctrine "by its terms applies only to procedural rules." *Bousley v. United States*, 523 U.S. 614, 620 (1998). New substantive rules are outside *Teague*'s purview altogether. *Id.*[2]

Substantive rules can result from judicial decisions construing a federal statute or the federal Constitution. A substantive statutory rule includes a rule that narrows the interpretation of an element in a federal criminal statute, thereby curtailing the statute's reach. *See Bousley*, 523 U.S. at 620-621 (holding that the narrowing interpretation of the "use" element of the crime defined in 18 U.S.C. § 924(c), adopted in *Bailey v. United States*, 516 U.S. 137 (1995), was substantive). A substantive constitutional rule includes a rule that "place[s] particular conduct or persons covered by [a] statute beyond the [government's] power to punish." *Schriro v. Summerlin*, 542 U.S. 348, 352 (2004). Substantive conduct-restricting constitutional rules include decisions holding that the First Amendment prohibits criminal prosecution for flag burning. *See, e.g.*, *United States v. Eichman*, 496 U.S.

---

2 *Teague*, and many of the early cases applying its approach, initially characterized substantive rules as an "exception" to the general rule of non-retroactivity. *See Teague*, 489 U.S. at 311; *see also Lambrix v. Singletary*, 520 U.S. 518, 539 (1997). The Court has since clarified that substantive rules are exempt from *Teague*'s ambit (because *Teague* by definition only reaches procedural rules), and thus are not subject to its bar in the first place. *See Beard v. Banks*, 542 U.S. 406, 411 n.3 (2004); *Schriro*, 542 U.S. at 352 n.4. Either way, the bottom line is the same: new substantive rules are not subject to *Teague*'s limitations on retroactivity.

310 (1990); *Texas v. Johnson*, 491 U.S. 397 (1989). Substantive penalty-restricting constitutional rules include decisions holding that the Eighth Amendment bars the death penalty for certain offenders. *See, e.g.*, *Roper v. Simmons*, 543 U.S. 551 (2005) (juveniles); *Atkins v. Virginia*, 536 U.S. 304 (2002) (intellectually disabled). Those new rules are retroactive in cases on collateral review because they "'necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal' or faces a punishment that the law cannot impose upon him." *Schriro*, 542 U.S. at 352 (quoting *Bousley*, 523 U.S. at 620)).[3]

Procedural rules—i.e., rules that "regulate[] only the manner of determining the defendant's culpability," *Schriro*, 542 U.S. at 353—can also result from the construction of a federal criminal statute or the interpretation of the Constitution. A procedural rule of statutory construction includes a rule declaring that Congress

---

3 A new rule will also qualify as substantive, in the government's view, if it expands the range of possible sentencing outcomes beyond that which previously existed, even if it does not categorically prohibit the imposition of a certain punishment. Conversely, a new rule that broadens the sentencing court's discretion without changing the lawful range of sentencing outcomes does not apply retroactively to cases on collateral review. For example, the remedial opinion in *United States v. Booker*, 543 U.S. 220 (2005), expanded sentencers' discretion by excising portions of the Sentencing Reform Act that made the Guidelines mandatory. *Id.* at 245-68. So did *Pepper v. United States*, 562 U.S. 476 (2011), by excising 18 U.S.C. § 3742(g)(2). 562 U.S. at 493-98. Yet courts have held that neither decision is retroactively applicable on collateral review. *See, e.g.*, *Duncan v. United States*, 552 F.3d 442, 445-47 (6th Cir. 2009) (*Booker*'s remedial holding); *Blount v. United States*, 2012 WL 2594109, at *3-4 & nn.9-10 (E.D. Pa. Jul. 5, 2012) (unpub.) (*Pepper*).

intended for a particular fact in a statute to be an element of a crime, rather than a sentencing factor. *See United States v. Gonzales*, 327 F.3d 416, 416-17 (5th Cir. 2003) (holding that the rule of *Castillo v. United States*, 530 U.S. 120 (2000), which held that firearm type was an element of the crime defined in an earlier version of 18 U.S.C. § 924(c)(1), was a procedural rule).[4] A procedural rule of constitutional law includes a rule that requires facts to be treated as elements of a crime, *see Apprendi v. New Jersey*, 530 U.S. 466 (2000), or a rule regulating the admissibility of evidence at trial, *see Crawford v. Washington*, 541 U.S. 36 (2004).

Unlike substantive rules, these rules do not forbid prosecution or conviction for a crime or otherwise alter the permissible range of outcomes; rather, they concern *how* the ultimate determination (guilt or innocence or the appropriate sentence) must be reached. In the case of *Crawford*, for example, the rule requires an opportunity for cross-examination of an out-of-court declarant; in the case of *Apprendi*, the rule requires a jury finding as to the operative fact beyond a reasonable doubt. Neither

---

4 Decisions declaring that Congress intended for a fact enumerated in a statute to be an element of a crime (as opposed to a sentencing factor) are qualitatively different from decisions redefining the meaning of a fact that has already been deemed an element of a crime. The former, illustrated by *Castillo*, are procedural: a ruling that a fact is an element, rather than a sentencing factor, does not alter the substantive reach of the statute but instead triggers a defendant's rights to have that fact initially found by a grand jury and subsequently found by a petit jury beyond a reasonable doubt. The latter, illustrated by *Bailey*, are substantive because they narrow the reach of the statute by redefining the boundary between lawful and unlawful conduct.

changes the range of legally permissible outcomes.

New procedural rules therefore do not implicate the concerns that justify the retroactive application of new substantive rules: they do not produce a class of persons who have been convicted of non-criminal conduct or alter the range of sentences for which the defendant is eligible, but instead "merely raise the possibility" that the now-invalid procedure might have affected the course of the proceeding. *See Schriro*, 542 U.S. at 352. This "more speculative connection" to outcomes has led the Supreme Court to deny retroactive effect to new procedural rules in federal collateral review and thereby protect the finality of criminal judgments. *See Teague*, 489 U.S. at 311; *see also Bousley*, 523 U.S. at 620.

c. Watershed Rules

The almost invariable rule that new procedural rules do not apply retroactively to cases on collateral review is subject to a narrow exception that permits the retroactive application of "watershed rule[s] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Saffle v. Parks*, 494 U.S. 484, 495 (1990). To come within this "extremely narrow" exception, *id*., "a new rule must meet two requirements: (1) infringement of the rule must seriously diminish the likelihood of obtaining an accurate conviction, and (2) the rule must alter our understanding of the bedrock procedural elements essential to the fairness

of a proceeding." *Tyler v. Cain*, 533 U.S. 656, 665 (2001). Although the Supreme Court has never found that a new procedural rule qualifies as watershed, *see Whorton v. Bockting*, 549 U.S. 406, 417, 418 (2007), it has explained that the exception is intended for rules bearing the same "primacy and centrality" to the criminal justice process as the rule of *Gideon v. Wainwright, supra*. *See, e.g., Saffle*, 494 U.S. at 495; *O'Dell v. Netherland*, 521 U.S. 151, 167 (1997) (new rule deemed not to be watershed because it was "not on par" with the "sweeping rule of *Gideon*").

2. <u>A rule that *Johnson* extends to the Guidelines would represent a new, non-watershed rule of procedure</u>.

A ruling that *Johnson* renders the residual clause in the Guidelines unconstitutionally vague depends on the announcement of not one, but two, new non-watershed rules of criminal procedure. Accordingly, *Teague* bars the Court from announcing those rules and from granting defendant collateral relief from his Guidelines sentence.

a. <u>A rule extending *Johnson* to the Guidelines would be "new</u>."

No prior precedent dictated the conclusion that the Guidelines' residual clause in § 4B1.2(a)(2) is unconstitutionally vague. To the contrary, the Supreme Court had twice rejected the argument that the identically worded residual clause in the ACCA was vague when that argument was pressed in dissenting opinions. *See James v. United States*, 550 U.S. 192, 210 n.6 (2007); *Sykes v. United States*, 564

U.S. 1, 15-16 (2011). To conclude as it did, *Johnson* had to "overrule[] . . . [the] contrary holdings in *James* and *Sykes*," 135 S. Ct. at 2563, and "there can be no dispute that a decision announces a new rule it if expressly overrules a prior decision." *Graham v. Collins*, 506 U.S. 461, 467 (1993); *accord Saffle*, 494 U.S. at 488.

The conclusion that *Johnson* announced a new rule is particularly clear in this case, where this Court may grant relief only by extending *Johnson*'s holding to the Guidelines. *Johnson* voided the ACCA's residual clause for vagueness, and in doing so, abandoned the Court's previous efforts to narrow the scope of that clause through judicial construction. 135 S. Ct. at 2556-60, 2563. Yet *Johnson* nowhere mentioned the Guidelines, even though the Guidelines contain an identically-worded residual clause in § 4B1.2. A rule that the career-offender guideline's residual clause is unconstitutionally vague in light of *Johnson* would therefore be a "new" rule.

b. A rule extending *Johnson* to the Guidelines would be "procedural."

Applying *Johnson* to the career-offender guideline's residual clause would also be a procedural rule subject to *Teague*. The effect of *Johnson* in the Guidelines context stands in contrast to the effect of *Johnson* under the ACCA. Under the ACCA, when a court relied on the residual clause to find that the defendant had the

necessary three prior convictions, the defendant's sentence was elevated from a maximum of ten years to a minimum of 15 years. *Compare* 18 U.S.C. § 924(a)(2) *with* 18 U.S.C. § 924(e)(1). The constitutional rule announced in *Johnson* renders the 15-year minimum prison sentence illegal, and that change is substantive: it alters the permissible ranges of sentences. *See, e.g., Price v. United States*, 794 F.3d 731, 734 (7th Cir. 2015) (concluding, in an ACCA case, that *Johnson* "announced a new substantive rule" because "[a] defendant who was sentenced under the residual clause necessarily bears a significant risk of facing a punishment the law cannot impose upon him") (internal quotation marks omitted); *In re Rivero*, 797 F.3d 986, 989 (11th Cir. 2015) (agreeing "that *Johnson* announced a new substantive rule of constitutional law").[5]

---

5 *Price* and *Rivero* both involved applications by defendants for permission to file a second or successive Section 2255 motion, which requires the defendant to make a *prima facie* showing that the new constitutional rule at issue has been "made retroactive to cases on collateral review by the Supreme Court." 28 U.S.C. § 2255(h)(2). Although *Price* (an ACCA case) and *Rivero* (a career-offender case) both concluded that *Johnson* announced a new substantive rule of constitutional law, they disagreed about whether the Supreme Court had "made" that rule retroactive to cases on collateral review. *See generally Tyler v. Cain*, 533 U.S. 656, 662 (2001) (explaining that a new rule has been made retroactive by the Supreme Court to cases on collateral review when precedent logically and necessarily dictates that result). *Price*'s holding and reasoning are correct. *Rivero*'s holding—that career-offender claims are not redressable in a successive collateral attack—is correct, but portions of the court's opinion, including its view that *Johnson* is a substantive rule as applied to the Guidelines, are incorrect. Indeed, *Rivero* had no need to comment on that issue because it held that the Supreme Court had not "made" *Johnson* retroactive to cases on collateral review for purposes of a successive collateral attack. In any event, this case involves an initial motion to vacate under Section 2255, not a

Misapplications of the Guidelines, in contrast, do not have the same consequences. A rule invalidating the crime-of-violence residual clause would establish that the defendant's Guidelines sentencing range was incorrectly calculated, but it would not disturb the statutory boundaries for sentencing set by Congress for the crime. The career-offender guideline does not trigger a statutory mandatory minimum sentence that would not otherwise apply and does not elevate the statutory maximum, as is true under the ACCA. *See Mistretta v. United States*, 488 U.S. 361, 396 (1989) (Guidelines do not usurp "the legislative responsibility for establishing minimum and maximum penalties for every crime," but instead operate "within the broad limits established by Congress"). Indeed, Guidelines sentences must always be within the limits set by Congress; as a result, a Guidelines sentence imposed on the basis of an incorrect Guidelines sentencing range may be erroneous, but it is not illegal or unlawful as in a case involving prejudicial *Johnson* error under the ACCA. *See, e.g. Sun Bear v. United States*, 644 F.3d 700, 705 (8th Cir. 2011) (en banc) (explaining that "Sun Bear's 360-month [Guidelines] sentence," imposed on the basis of an error in classifying him as a mandatory career offender, "is not unlawful" because "[a]n unlawful or illegal sentence is one imposed without, or in

---

successive motion, so the precise issue on which those courts disagreed is not implicated here.

excess of, statutory authority"). An error in calculating the Guidelines sentencing range, therefore, does not alter the statutory sentencing range or prevent re-imposition of the same sentence without the career-offender enhancement, as would be true with prejudicial *Johnson* error in the ACCA setting.

To illustrate, the defendant here faced a statutory sentencing range of not more than 10 years. 18 U.S.C. § 924(a)(2). Defendant's 108 months' sentence was well within this statutory range. Had the defendant been sentenced without regard to the career-offender designation, his total offense level would have been 25, and his criminal history category of III, producing an advisory Guidelines sentencing range of 70-87 months. Thus, even without applying the career-offender provision to the defendant's Guidelines calculation, his Guidelines sentencing range would have been within the statutory range. It bears noting that the mere fact that a different (even lower) Guidelines range might have applied but for the asserted error, however, does not alter the statutory range within which the sentence is imposed, nor does it render the 108-months' sentence unlawful.

In cases describing appellate review under *United States v. Booker,* 543 U.S. 220 (2005), the Supreme Court has characterized errors in calculating a defendant's advisory guidelines range as "procedural," rather than substantive. *See, e.g., Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013) ("Failing to calculate the correct

[advisory] Guidelines range constitutes procedural error.") (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). That reflects the role of the Guidelines in the sentencing process: they are a step in imposing sentence, not a statutory direction on the range of available sentences. And although the meaning of "substance" and "procedure" can vary based on context, *see Sun Oil Co. v. Wortman*, 486 U.S. 717, 726 (1988), one court of appeals has relied on *Peugh*'s reference to "procedural error" to conclude that new rules affecting the calculation of a defendant's advisory guidelines range are procedural and thus not retroactive on collateral review. *See Hawkins v. United States*, 724 F.3d 915, 917-18 (7th Cir. 2013) (supplemental opinion on denial of rehearing) (suggesting that because the Supreme Court described use of the incorrect Guidelines range as "procedural error," the Ex Post Facto holding in *Peugh* would not be applied retroactively on collateral review), *cert. denied*, 134 S. Ct. 1280 (2014); *see also Herrera-Gomez v. United States*, 755 F.3d 142, 146-47 (2d Cir. 2014) (holding that *Peugh* announced a new, non-watershed procedural rule that could not support a second-or-successive Section 2255 motion).

Nor does *Johnson* qualify as a substantive rule on the theory that it expands the sentencing court's discretion to consider a broader range of options than those that existed previously. A rule invalidating a mandatory minimum statutory

punishment illustrates this type of substantive rule. *See Miller v. Alabama*, 132 S. Ct. 2455 (2012) (invalidating mandatory life without parole for juvenile homicide defendants). In *Miller*, at the time of sentencing, the court had one, and only one, sentencing option—life imprisonment. After the Supreme Court's decision in *Miller*, however, the sentencing court in such a case must have discretion to consider a broader and more lenient range of sentencing options than those that existed previously. That rationale does not apply with respect to an error in calculating a defendant's Guidelines sentencing range, however, because courts always had discretion, in varying degrees, to consider a range of sentencing options in Guidelines cases.

Before *United States v. Booker*, *supra*, sentencing courts had the authority to "depart" from the guidelines range in appropriate cases. *See* U.S.S.G. § 5K2.0, p.s.; *see also Koon v. United States*, 518 U.S. 81, 92 (1996); *Williams v. United States*, 503 U.S. 193, 205 (1992) ("The selection of the appropriate sentence from within the guideline range, as well as the decision to depart from the range in certain circumstances, are decisions that are left solely to the sentencing court."). After *Booker*, sentencing courts have broader authority to "vary" from the now-advisory guidelines range, *see Booker*, 543 U.S. at 245-46, including, in particular, the career-offender guideline range. *See, e.g.*, *Spencer v. United States*, 773 F.3d 1132, 1142

(11th Cir. 2014) (en banc) (stating that "sentencing courts depart or vary from the guideline range more often when they sentence career offenders"). That judicial authority to impose lesser sentences than called for by the Guidelines illustrates that an erroneous application of the Guidelines, such as an erroneous career-offender designation, is a procedural step in a multi-step process that results in a court's selection of a sentence, not a substantive rule that expands or contracts the statutory range of outcomes. Accordingly, *Johnson*'s application to the Guidelines constitutes a *procedural* rule, not a substantive decision entitled to retroactive application in Guidelines cases on collateral review.[6]

---

6 The government previously conceded that the rules announced in *Begay v. United States*, 553 U.S. 137 (2008), *Chambers v. United States*, 555 U.S. 122 (2009), and *Descamps v. United States*, 133 S. Ct. 2276 (2013), were substantive, and hence retroactive, on collateral review in ACCA and Guidelines cases alike. *See, e.g.*, *Narvaez v. United States*, 674 F.3d 621, 625 (7th Cir. 2011) (noting concession that *Begay* and *Chambers* are retroactive in a Guidelines case). Courts considering the issue agreed that these decisions were retroactive in ACCA cases, but some courts expressed doubt about whether these decisions were retroactive in Guidelines cases under both the formerly-mandatory guidelines, *see Sun Bear v. United States*, 644 F.3d 700, 703 (8th Cir. 2011) (en banc), and the now-advisory Guidelines, *see Hawkins v. United States*, 724 F.3d 915, 917-18 (7th Cir. 2013) (supplemental opinion). After reexamining its position on this issue in light of *Johnson*, the government now believes that rules relating solely to the calculation of a defendant's Guidelines range (mandatory and advisory alike) are procedural, and hence not retroactive to cases on collateral review. The government's prior contrary concessions do not bind this Court. *See, e.g.*, *United States v. Ogles*, 440 F.3d 1095, 1099 (9th Cir. 2006) (en banc) ("We are not bound by a party's concession as to the meaning of the law, even if that party is the government and even in the context of a criminal case."). Nor do they confer any rights upon defendants. *Cf. United States v. Apel*, 134 S. Ct. 1144, 1151 (2014) ("Their views may reflect overly cautious legal advice based on division in the lower courts. Or they may reflect legal error. Either way, we have never held that the Government's reading of a criminal statute is entitled to any deference.").

c. A rule extending *Johnson* to the Guidelines would not be "watershed."

The new procedural rule resulting from the extension of *Johnson*'s holding to the Guidelines' residual clause would not be "watershed." An error in calculating a defendant's Guidelines sentencing range does not necessarily render the sentence unfair or unreliable in the way that a complete deprivation of the right to counsel renders a trial conducted without counsel unfair and unreliable. *See*, *e.g.*, *United States v. Cronic*, 466 U.S. 648, 659 (1984) (complete denial of counsel at a critical stage renders the trial "unfair," and the "adversary process itself presumptively unreliable"). There will be many cases where the sentencing court's reliance on the residual clause did not affect the sentence (*i.e.*, cases where the court indicates that it would have imposed the same sentence regardless of the range, or where the defendant has other qualifying prior convictions).

*Johnson* in any event does not alter our understanding of the bedrock procedural elements essential to the fairness of a sentencing proceeding. *Johnson* did not recognize, for the first time, that the due process clause prohibits vague penal laws; rather, it merely extended that well-recognized constitutional principle, *see*, *e.g.*, *Lanzetta v. New Jersey*, 306 U.S. 451, 458 (1939), to hold a particular statutory enhancement unconstitutionally vague. *See Johnson*, 135 S. Ct. at 2577. But new

rules that merely apply a pre-existing legal principle in a new context do not "effect a sea change in criminal procedure comparable to that wrought by *Gideon*." *Panetti v. Stephens*, 727 F.3d 398, 414 (5th Cir. 2013).

3. A rule that the Guidelines are subject to vagueness challenges would represent a new, non-watershed rule of procedure.

The application of *Johnson* here would require application of an additional new procedural principle: it would require the conclusion that sentencing guidelines that form part of the process for determining a defendant's sentence within a statutory range must conform to constitutional standards that prohibit vague criminal laws. The government does not dispute that, in light of *Peugh*'s analysis of the guidelines in applying Ex Post Facto principles, and *Johnson's* articulation of vagueness doctrine in the sentencing context, today, it is established that the Guidelines must meet due process vagueness standards. But courts can only reach that conclusion by combining—and thereby extending—two distinct lines of precedent, one of which applied due-process vagueness principles to sentencing *statutes*, and one of which concluded that the advisory Guidelines implicate a separate constitutional provision (the Ex Post Facto Clause) that is tied in part to notice principles. *Teague* bars this Court from doing so for the first time on collateral review for cases that became final before *Johnson*, such as the defendant's case.

a. <u>A rule allowing vagueness challenges to the Guidelines would be "new."</u>

No pre-*Johnson* precedent dictated, to all reasonable jurists, the conclusion that the Guidelines are amenable to vagueness challenges. *United States v. Batchelder*, 442 U.S. 114 (1979), a pre-Guidelines-era case, suggested that sentencing statutes that do not specify "with sufficient clarity the consequences of violating a given criminal statute" may be vulnerable to vagueness challenges, *id*. at 123, but that language was not necessary to the decision because the statute at issue "unambiguously specif[ied] . . . the penalties available upon conviction." *Id*. Authority that supports a proposition "in dictum" does not "'control[]' or 'dictate[]' [a] result" for *Teague* purposes. *Lambrix v. Singletary*, 520 U.S. 518, 529 (1997); *cf*. *Williams v. Taylor*, 529 U.S. 362, 412 (2000) (opinion of O'Connor, J., for the Court) (statutory provision limiting federal habeas corpus relief for state prisoners to cases where the lower court decision violates "clearly established Federal law," which incorporates *Teague*'s "new rule" standards, refers "to holdings, as opposed to dicta").

*Peugh* determined that the advisory guidelines are subject to the Ex Post Facto Clause, 133 S. Ct. at 2078, but that decision did not address due process vagueness principles. Although *Peugh*'s reasoning supports the conclusion that due process vagueness review applies to the Guidelines, it does not dictate that result. *See, e.g.*,

*Beard v. Banks*, 542 U.S. 406, 414 (2004) (emphasizing that existing precedent must "compel," not merely "support," the result); *Sawyer*, 497 U.S. at 236 (prior decisions may "inform . . . the analysis of [a] claim" without "compel[ling]" it).

The conclusion that a rule that sentencing guidelines must conform to due process vagueness principles is "new" under *Teague* is buttressed by several additional factors. First, historically, the traditional sentencing systems in this country afforded wide, unstructured discretion to sentencing courts. In those systems, judges both determined the factors that influence particular sentences and the weight placed on those factors in light of the defendant's background, criminal history, and conduct. *See generally Koon*, 518 U.S. at 113; *Williams* v. *New York*, 337 U.S. 241, 246 (1949). Yet no court ever suggested (much less held) that such a scheme—that afforded little, if any, notice of what sentence a defendant would receive and permitted outcomes that differed from judge to judge—was unconstitutionally vague.

Second, before *Peugh* and *Johnson*, three of the four courts of appeals to consider the issue rejected the argument that the Guidelines were subject to due process vagueness review. *See United States v. Brierton*, 165 F.3d 1133, 1139 (7th Cir. 1999); *United States v. Smith*, 73 F.3d 1414, 1417-1418 (6th Cir. 1996); *United States v. Wivell,* 893 F.2d 156, 159-160 (8th Cir. 1990). Those circuits rested their

holdings on the observation that "[t]he Guidelines do not establish the illegality of any conduct," and the view that "a defendant has no constitutional right to . . . directives" that "are designed to assist and limit the discretion of the sentencing judge." *Brierton*, 165 F.3d at 1139; *see also Wivell*, 893 F.2d at 160 ("Even vague guidelines cabin discretion more than no guidelines at all."); *Smith*, 73 F.3d at 1417-18. The Ninth Circuit held otherwise, *see United States v. Johnson*, 130 F.3d 1352 (1997) (citing *United States v. Gallagher*, 99 F.3d 329, 334 (9th Cir. 1996)), but even it acknowledged that vagueness challenges to the Guidelines "have been questioned as theoretically unsound," *id*. at 1354 (citing *Wivell*, 893 F.2d at 159-60). And as in *Batchelder*, the analysis in *Johnson* and *Gallagher* was unnecessary to the decision because the challenged provisions were found not to be vague. *See Johnson*, 130 F.3d at 1354; *Gallagher*, 99 F.3d at 334.

Courts have expressed different views on whether circuit court precedent (as opposed to Supreme Court precedent) can ever "dictate" a rule for purposes of *Teague*. *Compare Soffar v. Cockrell*, 300 F.3d 588, 598 (5th Cir. 2002) (en banc) ("In order to qualify as existing, a rule must be dictated by Supreme Court precedent, not circuit court precedent.") *with Schwab v. Crosby*, 451 F.3d 1308, 1323 (11th Cir. 2006) ("A rule is considered new for *Teague* purposes unless it is dictated by precedent—mostly Supreme Court precedent, although federal court of appeals

decisions are entitled to some respect in the inquiry.”). But “[e]ven assuming that circuit precedent, as opposed to Supreme Court precedent, is relevant in determining whether a rule is dictated by precedent under *Teague*,” *Billings v. Polk*, 441 F.3d 238, 253 n.14 (4th Cir. 2006); *Clemmons v. Delo*, 124 F.3d 944, 955 n.11 (8th Cir. 1997), the fact that three circuits disagreed with the Ninth Circuit’s approach supports the conclusion that reasonable jurists, before *Peugh* and *Johnson*, would not have felt compelled to adopt that view.

b. A rule allowing vagueness challenges to the Guidelines would be “procedural.”

A rule requiring that particular sentencing guidelines must be drafted with the same level of specificity as criminal statutes in order to satisfy due process vagueness concerns would be a procedural rule. It would dictate *how* part sentencing guidelines must be framed in order to comply with due process; it would not dictate any particular substantive outcomes. This is evident from the sentencing process in the federal system, which encompasses at least three steps: first, a court determines the applicable Guidelines sentencing range by applying the particular sentencing guidelines to the facts; second, it determines whether any deviations from that range are warranted (either by way of a “departure” or, in the post-*Booker* era, a “variance”); and third, it determines the appropriate sentence.

Because the calculation of the Guidelines sentencing range is itself merely a

step in the process whereby a judge determines the appropriate sentence to impose, a rule requiring that the sentencing range (at step one) be defined with a certain level of precision is a rule of process. It relates to the *manner* for determining the starting point for federal sentencing—the initial calculation of the sentencing range—but it does not dictate particular sentencing outcomes, or alter the permissible range of outcomes. And this is particularly true for the advisory Guidelines system in place after *Booker*: sentencing courts must calculate and consider the sentencing range, but the overarching obligation of a sentencing court is to impose a sentence that is sufficient but not greater than necessary to serve the purposes of sentencing. *See* 18 U.S.C. § 3553(a); *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). A rule that the particular sentencing guidelines, especially advisory ones, must satisfy due process vagueness standards therefore differs fundamentally and qualitatively from a holding that a particular criminal statute or sentencing provision is substantively vague.

c. <u>A rule allowing vagueness challenges to the Guidelines would not be "watershed</u>."

A new procedural rule permitting vagueness challenges to the Guidelines would not rank as a watershed rule. A particular sentencing guideline would be entirely reasonable if it directed the judge to impose a "substantially" greater sentence within a range if the defendant's conduct caused "serious bodily injury," or

displayed a "significant disregard of the risk of injury," even though those qualitative terms afford considerable leeway in application. *Cf. Johnson*, 135 S. Ct. at 2561 (distinguishing case-specific determinations). A rule that requires particular sentencing guidelines to conform to a specific level of precision therefore is an incremental change in sentencing procedure, not a critical component of sentencing "accuracy." And in any event, a rule that vagueness principles apply to the Guidelines would not alter our understanding of the "bedrock" elements of sentencing. A rule allowing particular sentencing guidelines to be challenged on vagueness grounds would not compel the States to adopt sentencing guidelines in the way *Gideon* compelled States to provide counsel for indigent defendants. And such a rule would be relatively narrow: it would pertain only to particular sentencing guidelines that employ indeterminate terminology as measured against "an idealized ordinary case," rather than actual facts. *See Johnson*, 135 S. Ct. at 2561 ("As a general matter, we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as 'substantial risk' to real-world conduct."). Such a rule lacks the sort of far-reaching, across-the-board ramifications that inhere in the *Gideon* rule. Accordingly, the *Johnson* rule "has none of the primacy and centrality of the rule adopted in *Gideon*." *Saffle*, 494 U.S. at 495; *see also Whorton*, 549 U.S. at 421 (rule at issue "is not in the same category

with *Gideon*").

Accordingly, this Court should deny the defendant's motions because *Johnson* does not apply retroactively on collateral review to Guidelines sentences, such as defendant's sentence.[7]

IV. Robbery is a Crime of Violence

While the government contends that this Court need not reach the substantive question of whether robbery is a crime of violence given that *Johnson* does not apply retroactively to the guidelines, it nevertheless submits the following argument in support of its position that the defendant's prior conviction for robbery qualifies as a predicate crime of violence under U.S.S.G. § 4B1.2.

The prior conviction used to enhance the defendant's base offense level to 22 was robbery. (Doc. 21, *PIR*, p. 9 ¶ 36.) Under Kansas law, robbery is defined as the "taking of property from the person or presence of another by force or by threat of bodily harm to any person." Kan. Stat. Anno. § 21-3426. The defendant maintains that robbery no longer constitutes a crime of violence under the force clause of U.S.S.G. § 4B1.2. (Doc. 42, *Mot. to Vacate*, p. 15.) In particular, he

---

7 The government is cognizant of the recent opinion issued by Chief United States District Judge Marten finding that *Johnson* applies retroactively to the Guidelines. *See United States v. Aldershof*, No. 07-cr-10034-01-JTM, 2016 WL 7210717 (D.Kan. Dec. 13, 2016) (Memorandum & Order). For the reasons stated above, the government respectfully disagrees with Chief Judge Marten's holding in *Aldershof* and asks this Court to adopt the government's position in the instant matter.

argues that “[a]fter *Johnson*, neither the ‘force’ nor the ‘threat of bodily harm’ prong of the statute qualifies as a crime of violence under federal law.” (*Id*.)

Thus far, Kansas robbery has been held to qualify as a crime of violence. *United States v. Nicholas*, No. 14-10005-JTM, 2016 WL 300897 (D.Kan. Jan. 25, 2016); *see also Robinett v. United States*, No. 08-00264-CR-W-GAF-1, 2016 WL 2745883, at *4 (W.D. Mo. May 11, 2016) (Kansas robbery qualifies as a violent felony); *United States v. Brown*, 550 F.3d 724, 729 (8th Cir. 2008) (Kansas conviction for aiding a felon in the commission of an aggravated robbery has as an element “the use, attempted use, or threatened use of physical force against the person of another.”) In a recent decision, Chief Judge Marten further found that:

> The element of force or threat of bodily harm in Kansas robbery materially distinguishes this offense from *Johnson v. United States*, 559 U.S. 133 (2010), where the court found that a battery consisting of any intentional touching, “no matter how slight,” did not require the degree of physical force necessary for a crime of violence under § 924. *Id*. at 138. The Kansas element of the intentional use of force or threat of bodily harm necessarily contemplates force capable of causing pain or injury, placing this offense squarely within the violent felonies Congress had in mind in adopting the ACCA. *See id*. at 139 (noting Black's Law Dictionary definition of physical force as “[f]orce consisting in a physical act, esp. a violent act directed against a robbery victim”). *See also State v. Aldershof*, 220 Kan. 798, 556 P.2d 371 (1976) (a “sneak thief” who snatched a purse from victim's lap was not guilty of robbery; in robbery the taking must be accomplished by violence or intimidation); *State v. Miller*, 53 Kan. 324, 36 P. 751 (1894) (robbery is not committed where the thief obtains peaceable possession of the property and uses no violence).

Defendant offers up a multitude of reasons for not considering Kansas

> robbery as a crime of violence. Dkt. 95 at 12-39. But contrary to his argument, he cites no Kansas Supreme Court case finding the force element of robbery to be satisfied by evidence of "any physical contact" with the victim. To the contrary, Kansas cases characterize robbery as a taking accomplished by violence or intimidation. Nothing in *Johnson* undermines the common sense conclusion that the taking of property from a person "by force" or "threat of bodily harm" contemplates "the use ... or threatened use of physical force against another." § 924(e)(2)(B)(i).

*United States v. Bong*, No. 13-10004-01-JTM, 2016 WL 6395340 (D.Kan. Oct. 28, 2016) (Slip op.)[8]

This reasoning is further supported by the Tenth Circuit's most recent decision finding Colorado's robbery statute[9] to have as an element the use or threatened use of physical force against another. *United States v. Harris*, --- F.3d ---, 2017 WL 34458 (10th Cir. Jan. 4, 2017). There the Court held that:

> In sum, whether by force, or by threats or intimidation, we conclude that robbery in Colorado has as an element the use or threatened use of physical force against another person. The Colorado Supreme Court has emphasized that robbery requires a violent taking consistent with the common law, which comports with the definition of physical force provided by the Supreme Court in *Johnson I*. We therefore find it more theoretical than realistic that conduct (or threatened conduct) not equating to physical force would be prosecuted as robbery in Colorado. Thus, robbery in Colorado is a violent felony under the ACCA's elements clause

---

8 The defendant submits that Judge Melgren's decision in the *Banks* case (Doc. 42-1) should control the outcome of this matter. For the reasons stated by the government, the holding in the *Nicholas* case is arguably the persuasive position and is further strengthened by the Tenth Circuit's recent decision in the *Harris* case.

9 Pursuant to C.R.S.A. § 18-4-301, Robbery in Colorado is defined as "[a] person who knowingly takes anything of value from the person or presence of another by the use of force, threats, or intimidation commits robbery."

in § 924(e)(2)(B)(i).

*Id*. at *9.[10]

As Chief Judge Marten has correctly stated, "Kansas cases characterize robbery as a taking accomplished by violence or intimidation. Nothing in *Johnson* undermines the common sense conclusion that the taking of property from a person "by force" or "threat of bodily harm" contemplates "the use ... or threatened use of physical force against another." *Bong*, supra.

For the foregoing reasons, this Court should similarly deny the defendant's argument that his Kansas conviction for robbery fails to qualify as a crime of violence.

10 The Kansas and Colorado robbery statutes are not dissimilar and thus *Harris* provides persuasive authority in this case.

Respectfully submitted,

THOMAS E. BEALL
United States Attorney
District of Kansas

By: /s/ Jared S. Maag
JARED S. MAAG, KS Bar No. 17222
Assistant United States Attorney
District of Kansas
290 Carlson Federal Building
444 SE Quincy Street
Topeka, KS 66683
Ph: 785.295.2850 (Office)
Fax: 785.295.2853
jared.maag@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of January, 2017, I electronically filed the foregoing Response with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Kirk C. Redmond
First Assistant Federal Public Defender
Office of the Federal Public Defender
117 SW 6th Ave., Suite 200
Topeka, KS 66603
785-232-9828
kirk_redmond@fd.org

By: /s/ Jared S. Maag
JARED S. MAAG, Ks. Bar. No. 17222
Assistant United States Attorney