**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**UNITED STATES OF AMERICA,**
*Plaintiff,*

**v.** Case No. **2:11-cr-20012-KHV-1**

**CODY M. JUSTICE,**
*Defendant.*

---

**REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO LIFT STAY AND VACATE SENTENCE**

---

Two issues remain: whether *Johnson* applies retroactively to Sentencing Guidelines cases on collateral review, and whether Kansas robbery is a crime of violence. We take those issues in order.

**1. *Johnson* applies retroactively to the petitioner.**

First, the government contends that *Johnson v. United States,* __ U.S. __, 135 S. Ct. 2551 (2015), is not substantive and therefore, not retroactive on collateral review to petitioners alleging their sentence was based on the unconstitutional residual clause of U.S.S.G. § 4B1.2. A rule is substantive rather than procedural if it "alters the range of conduct or the class of persons that the law punishes" by, for example, "narrow[ing] the scope of a criminal

statute by interpreting its terms" or "plac[ing] particular conduct or persons covered by the statute beyond the State's power to punish."[1]

The government contends that *Johnson* does not announce a substantive rule for two reasons. It "asserts that *Johnson's* application to the Guidelines is procedural because, unlike application to the ACCA, '(1) it does not change the range of legally permissible outcomes (which are limited by statutory minimums and maximums) and (2) errors in calculating a defendant's advisory guidelines range have been characterized as procedural by the Supreme Court.'"[2] But as the Circuits to address these contentions have concluded, "neither argument is convincing."[3]

Our briefing has previously addressed both of the government's assertions,[4] and we will not repeat it here. Instead, we rely on authority decided since our last filing to make three points. First, the government uses the wrong test to determine whether a rule is substantive. Second, the appearance of the word "procedural" in a Supreme Court opinion foreign to our question provides no support for the government's argument. Third, the Supreme Court has held that *Johnson* is a substantive rule in the ACCA

---

[1] *Welch v. United States*, __ U.S. __, 136 S. Ct. 1257, 1264-65 (2016).

[2] *In re Patrick*, 833 F.3d 584, 588 (6th Cir. 2016), quoting *In re Hubbard*, 825 F.3d 225 (4th Cir. 2016).

[3] *Patrick* at 588, quoting *Hubbard* at 231.

[4] D.E. 42.

context, and that holding establishes a categorical rule. A rule substantive in one context is substantive in all others.

### 1.1 The government uses the wrong test for whether a rule is substantive.

Contrary to the government's suggestion, a rule need not alter statutory ranges to be deemed substantive. Rather, a rule is substantive if failing to apply it "carr[ies] a significant risk that a defendant…faces a punishment that the law cannot impose upon him."[5] The unconstitutional residual clause in U.S.S.G. § 4B1.2 creates just such a risk, because when applied it "anchor[s] the sentencing court's discretion"[6] and has a "real and pervasive effect"[7] on the sentence the Court imposes. The government's reliance[8] on a test rejected by the Supreme Court dooms its argument.

This term, the Supreme Court has decided two cases which explore what makes a rule substantive and therefore retroactive to cases on collateral review: *Montgomery v. Louisiana,*[9] and *Welch v. United States.*[10] Each case followed the same analytical framework for determining whether a rule is substantive and therefore retroactive to cases on collateral review. Each case

---

[5] *Montgomery v. Louisiana*, __ U.S. __, 136 S. Ct. 718, 734 (2016).
[6] *Molina-Martinez v. United States*, __ U.S. __, 136 S. Ct. 1338, 1345 (2016).
[7] *Molina-Martinez* at 1346.
[8] It is worth noting that the government's brief never cites *Montgomery*.
[9] __ U.S. __, 136 S. Ct. 718, 734 (2016).
[10] __ U.S. __, 136 S. Ct. 1257 (2016).

asked not whether the rule in question altered the available statutory ranges, but whether the failure to apply the rule would carry a significant risk that the defendant has been punished in a way that the law does not allow.[11] In these cases, the Court vacated unconstitutional sentences on collateral review because when a "sentence in fact is not authorized by substantive law, then finality interests are at their weakest."[12]

Courts reviewing *Johnson*-based collateral attacks on guideline sentences have recognized that *Montgomery* and *Welch* are fatal to the government's position here.[13]

---

[11] *Welch* at 1266, *Montgomery* at 734.

[12] *Welch* at 1266.

[13] There is contrary authority issued prior to the Supreme Court's decision in *Montgomery*. In a single sentence and without any analysis, the Eighth Circuit held that "any extension of the rule in Johnson would not be a new substantive rule[.]" *Richardson v. United States*, 623 Fed. Appx. 841, 842 (8th Cir. 2015). And some district courts have found that *Johnson* does not announce a substantive rule for guidelines cases because it does not change the legally authorized punishment. *Frazier v. United States*, Not Reported in F.Supp.3d, 2016 WL 885082 at 5 (E.D. Tenn. 2016) ("Any change in a defendant's Guideline range based on Johnson would thus work a change in the procedure by which his or her sentence is selected, but it would not change the permissible range of punishments."); *United States v. Willoughby*, 144 F.Supp.3d 935, 944 (N.D. Ohio 2015) ("Because the Sentencing Guidelines must always fit within the limits set by Congress, an erroneous career-offender designation carries no risk that a defendant faces a punishment that the law cannot impose upon him."). But these decisions predated the Supreme Court's decision in *Montgomery*, which rejects the test they employ.

"a new rule need not alter the statutory minimum or maximum penalty to be substantive. The Supreme Court confirmed this view in its decision in *Montgomery v. Louisiana*. *Montgomery* held that the new rule established in *Miller v. Alabama*, that juveniles could not be sentenced to life without parole without a hearing to account for their youth, was substantive and therefore retroactive. Though *Miller* had no impact on the statutory maximum or minimum sentence—courts could still find that a juvenile offender was 'permanent[ly] incorrigib[le]' and impose life imprisonment without parole, the Supreme Court found *Miller's* holding to be retroactive on collateral review because it 'rendered a certain penalty unconstitutionally excessive for a category of offenders.' *Montgomery* makes clear that new rules do not have to alter the statutory maximum or minimum sentence to be substantive and retroactive on collateral review."[14]

[14] *United States v. Rios*, __ F.Supp.3d __, 2016 WL 4472996 at 4 (E.D. Wash. 2016) (internal citations and quotation marks omitted); *United States v. Kennedy*, __ F.Supp.3d __, 2016 WL 6520524 at 5 (E.D. Cal. 2016) ("The Government's argument that errors in sentencing under the Guidelines are procedural rather than substantive is misplaced. The Court's reasoning in *Welch* for applying *Johnson* retroactively does not hinge on the fact that the ACCA imposed a mandatory minimum rather than a discretionary sentencing range. Rather, the Court noted that whether a rule is substantive or procedural turns on 'the function of the rule at issue.' *Welch*, 136 S. Ct. at 1266. As the Court held, where a new rule affects the scope of the conduct or class of persons impacted by the rule, it is substantive."); *United States v. Casas*, Not Reported in F.Supp.3d, 2016 WL 6522740 at 5 (E.D. Cal. 2016) (Citing *Montgomery* to conclude that *Johnson's* "rule was substantive and retroactive even though courts maintained discretion in sentencing"); *Gilbert v. United States*, Not Published in F.Supp.3d, 2016 WL 3443898 at 4 (W.D. Wash. 2016) ("Although the Court acknowledged that some

Further, a defendant sentenced under the unconstitutional residual clause has established a significant risk that he is serving a sentence that cannot be legally imposed.[15] The unconstitutional residual clause of § 4B1.2 likely had a significant effect on petitioner's sentence, because "when a Guidelines range moves up or down, offenders' sentences move with it."[16] After *Johnson*,

---

juveniles would still be sentenced to life without parole even with this special consideration, many would not be. *Id.* at 734. And because many would not be, the Court found that *Miller* established a new substantive rule, not a procedural one. See *id.* ("The fact that life without parole could be a proportionate sentence for [some juvenile offenders] does not mean that all other children imprisoned under a disproportionate sentence have not suffered the deprivation of a substantive right.").

[15] *United States v. Ramirez*, __ F.Supp.3d __, 2016 WL 3014646 at 9 (D. Mass. 2016) ("[I]n *Montgomery*, the Supreme Court held that the *Miller* rule was retroactive even though the rule did not categorically bar life without parole for juveniles, because it 'carr[ies] a significant risk that ... the vast majority of juvenile offenders ... face[ ] a punishment that the law cannot impose on [them].' According to the Supreme Court, it sufficed that *Miller* 'bar[red] life without parole ... for all but the rarest of juvenile offenders.' Similarly, here, an offender designated as career offender under the Guidelines' Residual Clause would be subject to a sentence multiple times higher than in the absence of the designation in the vast majority of cases. Given the impact of a career offender designation on a defendant's sentence, if a court were to refuse retroactively to apply the invalidation of the Guidelines' Residual Clause, the risk that a defendant received a sentence that otherwise he would not have received is more than 'likely to rise,' *Conrad v. United States*, 815 F.3d 324, 327 (7th Cir.2016). Rather, the court's decision would carry the 'impermissibly large risk,' *Teague*, 489 U.S. at 312, 109 S. Ct. 1060, that the punishment exceeds what the defendant would have received without the designation. This risk trumps finality in the *Teague* framework.").

[16] *Peugh v. United States*, ___ U.S. ___, 133 S. Ct. 2072, 2084, 186 L.Ed.2d 84 (2013) (noting that the Guidelines "remain the lodestone of sentencing").

defendants like petitioner "will no longer be eligible for certain enhancements and will most likely be given shorter sentences. *Johnson* therefore altered the 'range of conduct or class of persons' that the Guidelines punish"[17] and so announced a substantive rule.

### 1.2 The government's citation of *Peugh* is unhelpful.

The government relies heavily on a statement in *Peugh v. United States* that "[f]ailure to calculate the correct Guidelines range constitutes procedural error,"[18] contending this language demonstrates that employing an unconstitutional guideline is procedural error for purposes of collateral review. This is incorrect, for two reasons.

First, the government "fails to address the Supreme Court's express description of the Sentencing Guidelines as the substantive 'formula' used to calculate the applicable sentencing range[.]"[19] Second, the government takes

---

[17] *United States v. Kennedy*, __ F.Supp.3d __, 2016 WL 6520524 at 5 (E.D. Cal. 2016); *Gilbert v. United States*, Not Published in F.Supp.3d, 2016 WL 3443898 at 4 (W.D. Wash. 2016) ("In light of courts' reliance on the Guidelines, *Johnson* will likely have the same effect. Many defendants who would have been deemed career offenders under the Guidelines residual clause will now be given reduced sentences. The fact that some of their sentences will not be reduced does not, after *Montgomery*, mean that *Johnson* created anything but a new substantive rule.").

[18] 133 S. Ct. 2072, 2080 (2013).

[19] *Hubbard* at 235, citing *Peugh* at 2080. *Peugh* was not a decision about procedure. If it was, the case would have come out differently. "[N]o ex post facto violation occurs if the change effected is merely procedural." *Weaver v. Graham*, 101 S. Ct. 960, n. 12 (1981); *Dobbert v. Florida*, 97 S. Ct. 2290, 2298 (1977) (Rejecting ex post

*Peugh's* language out of context. The "terms 'substance' and 'procedure' precisely describe very little except a dichotomy, and what they mean in a particular context is largely determined by the purposes for which the dichotomy is drawn."[20] And "Both *Peugh* and *Gall*, the case on which the *Peugh* Court relies in its discussion of procedural and substantive rules, employ the terms substantive and procedural in a context unrelated to *Teague* retroactivity."[21] As "these uses of the terms 'procedural' and 'substantive' are unrelated to concerns about the risk of condemning an innocent individual or sentencing a defendant to an improper punishment, they do not control this Court's analysis under *Teague*."[22]

---

facto clause challenge because "the change in the statute was clearly procedural."); *Beazell v. Ohio*, 46 S. Ct. 68, 69 (1925) (Ex post facto clause does not "limit the legislative control of remedies and modes of procedure which do not affect matters of substance."). *Peugh* won because he raised a substantive claim; the Court said so. The "Ex Post Facto Clause forbids the [government] to enhance the measure of punishment by altering the substantive formula used to calculate the applicable sentencing range. That is precisely what the amended Guidelines did here. Doing so created a significant risk of a higher sentence for Peugh, and offended one of the principal interests that the Ex Post Facto Clause was designed to serve, fundamental justice." *Peugh* at 2088.

[20] *Sun Oil Co. v. Wortman*, 486 U.S. 717, 726, 108 S. Ct. 2117, 2124, 100 L.Ed.2d 743 (1988).

[21] *United States v. Ramirez*, __ F.Supp.3d __, 2016 WL 3014646 at n. 24 (D. Mass. 2016).

[22] *Id.*; *United States v. Jefferson*, Not Reported in F.Supp.3d, 2016 WL 6496456 at 6 (N.D. Cal. 2016) ("As in *Peugh*, 'the exercise of [the Court's] discretion' was 'cabin[ed]' by the Guidelines. *Id.* at 2084. Because the Guidelines provided the

### 1.3 Whether a rule is substantive is a categorical question.

Substantive rules "must be applied in all future trials, all cases pending on direct review, and all federal habeas corpus proceedings."[23] *Welch* declared unequivocally that *Johnson* was "a substantive decision and so has retroactive effect under Teague in cases on collateral review."[24] Since "*Johnson* made the [residual] clause invalid, it can no longer mandate or authorize any sentence."[25] Yet the government seeks to cabin the substantive impact of *Johnson's* rule to only one context- the ACCA.

But "the Government cites no support for the proposition that the same rule may be substantive and retroactive in one context but procedural and not retroactive in another."[26] The "Supreme Court's rationale in *Welch* for finding *Johnson* retroactive applies equally to the Guidelines."[27] Because "the 'substantive reach' of the Sentencing Guidelines would be altered just as

---

starting point for the Court's decision, and informed that decision, their advisory nature does not change *Johnson's* substantive nature.").

[23] *Danforth v. Minnesota*, 552 U.S. 264, 266, 128 S. Ct. 1029, 169 L.Ed.2d 859 (2008).

[24] 136 S. Ct. at 1265.

[25] *Id*. at 1260.

[26] *In re Patrick*, 833 F.3d 584, 588 (6th Cir. 2016); *In re Hubbard*, 825 F.3d 225, 234 (4th Cir. 2016) ("the government has cited no case to support the proposition that a rule can be substantive in one context but procedural in another.").

[27] *Patrick* at 588.

much as was true for the ACCA,"[28] *Welch* dictates that *Johnson* is substantive and retroactive in Guidelines cases as well.

**2. Kansas robbery is not a crime of violence.**

The Tenth Circuit's decision in *United States v. Harris*, 844 F.3d 1260 (10th Cir. 2017), clarifies how this Court should approach the question of whether Kansas robbery is a crime of violence. *Harris* prescribes a two-step inquiry: "we must identify the minimum 'force' required by [Kansas] law for the crime of robbery and then determine if that force categorically fits the definition of physical force." *Id.*[29]

The minimum force required by Kansas law to consummate a robbery is physical touching. *State v. Long*, 234 Kan. 580, 593, 675 P.2d 832, 841 (Kan. 1984) disapproved on other grounds in *State v. Keeler*, 238 Kan. 356, 710 P.2d 1279 (Kan. 1985) (Where the defendant "admitted he 'brushed by' Mrs. Wolf when he panicked and ran from the sale building…[t]his is not a situation where the defendant denies using force or threat of bodily harm to accomplish the taking."); *State v. Graham*, 27 Kan.App.2d 603, 606 (2000) (finding sufficient evidence of "use of force" where defendant "made physical contact with the clerks, and contemporaneously removed money from the register").

---

[28] *Hubbard* at 234.

[29] The *Harris* opinion currently available on Westlaw is not paginated.

The Kansas Supreme Court's decision in *State v. McKinney*, 265 Kan. 104 (Kan. 1998), illustrates the rule. The question in *McKinney* was whether snatching the victim's purse, in light of the defendant's testimony that he did not push the victim, warranted a lesser included offense instruction on theft. The *McKinney* court held that purse snatching alone, whether the defendant pushed the victim or not, proved a robbery. For clarity, we set out *McKinney's* analysis of the issue in full.

> Defendant next argues that the jury should have been instructed on theft as a lesser included offense of robbery of Glenda Evans' purse. McKinney told police that he had snatched Mrs. Evans' purse from her arm, but he denied pushing her. For this incident, he was charged with robbery. In McKinney's view, his statements warranted the trial court's giving an instruction on the lesser included offense of theft. The State's position is that McKinney's snatching the purse away from Evans constituted the threat of bodily harm, which is an element of robbery. Thus, the State argues, even in defendant's version of the incident, the evidence excludes a theory of guilt of theft. This is correct.

*Id*. at 113. This Court must defer to Kansas' construction of its robbery statute. ). *Johnson v. United States*, 559 U.S. 133, 138, 130 S. Ct. 1265, 176 L.Ed.2d 1 (2010) ("We are...bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements of [the crime of conviction].").

Unlike *Harris*, where the Court found it "more theoretical than realistic that conduct (or threatened conduct) not equating to physical force would be prosecuted as robbery in Colorado," the Kansas appellate courts have repeatedly affirmed robbery convictions on evidence that the defendant merely made physical contact with the victim. *Id.* The government's response relies heavily on the statement in *State v. Aldershof*, 220 Kan. 798, 803, 556 P.2d 371, 375 (1976), that robbery must be committed by "violence." But *McKinney*, which cites *Aldershof* favorably, demonstrates that when it says violence, the Kansas Supreme Court means physical touching. *Id.* at 113.

This line of precedent demonstrates that Kansas has departed from the common-law definition of robbery, which "required more than just stealing property from the person of another." *United States v. Parnell*, 818 F.3d 974, 982 (9th Cir. 2016) (Watford, concurring). By diluting the definition of "force" to mere physical touching, *Long, Graham*, and *McKinney* expand Kansas robbery beyond the confines of the common law offense. *Harris*, which examined a Colorado statute committed to the common law definition of robbery, does not control our case. *Harris*, ("[b]ecause Colorado remains committed to the common law definition of robbery, we do not find persuasive other recent circuit-level decisions concluding that robbery is not a violent felony.").

The second step of the Court's analysis is simple. The Supreme Court has squarely held that mere physical touching is not "force" under federal law. The phrase "physical force" means "violent force—that is, force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140. Physical force as defined by federal law is "extreme," "severe," "characterized by the exertion of great physical force or strength," and akin to "murder, forcible rape, and assault and battery with a dangerous weapon." *Id.* at 140-1. Touching or snatching property from a victim does not satisfy that standard. *Johnson* at 142 (rejecting that argument that "mere unwanted touching" is physical force under federal law); *United States v. Parnell*, 818 F.3d 974, 979 (9th Cir. 2016) ("Under our case law applying *Johnson*, this level of force—the snatching of a purse from a victim's hand—does not constitute force 'capable of causing physical pain or injury to another person.' *Johnson*, 559 U.S. at 140, 130 S. Ct. 1265."); *United States v. Jarmon*, 596 F.3d 228, 232 (4th Cir. 2010) (Statute which criminalizes act of "snatching a purse" is a crime of violence only under the residual clause); *United States v. Hennecke*, 590 F.3d 619, 623 (8th Cir. 2010) (Applying residual clause analysis because "purse snatching, is often a stealthy crime in which the offender hopes to avoid detection but must be prepared for the homeowner or a security guard or a passerby to intervene."); *United States v. Howze*, 343 F.3d 919, 923 (7th Cir. 2003) (same); *United States v. Hollins*, 514 Fed. Appx.

264, 266–69 (3rd Cir. 2013) (holding that a Pennsylvania robbery statute making it a crime to "physically take[ ] or remove[ ] property from the person of another by force however slight" does not have a violent force element; stating that, under *Johnson I*, "robbery by force, however slight, no longer satisfies [the force clause] definition of a crime of violence."); *In re Sealed Case*, 548 F.3d 1085, 1089 (D.C. Cir. 2008) (D.C. robbery statute that covered taking "by sudden or stealthy seizure or snatching" did not require "force or violence," so did not qualify as a violent felony under the ACCA or §4B1.2).

*Harris* strongly supports the conclusion that Kansas robbery is not a crime of violence. Kansas robbery is broader than the Colorado statute examined in *Harris* in two ways. First, Kansas permits a robbery conviction upon proof that the defendant touched the victim. Second, Kansas has departed from the common law rule that taking property from the victim does not constitute robbery. This Court should apply *Harris* to conclude that Kansas robbery is not a crime of violence.

## Conclusion

Petitioner is serving an unconstitutional sentence. When a "conviction or sentence in fact is not authorized by substantive law, then finality interests are at their weakest. As Justice Harlan wrote, there is little societal interest in permitting the criminal process to rest at a point where it ought properly never to repose."[30] *Johnson* is a substantive rule, permitting this Court to vacate petitioner's unconstitutional sentence. We ask it to do so.

Respectfully submitted,

s/ Kirk C. Redmond
Kirk C. Redmond, #18914
First Assistant Federal Public Defender
117 SW 6th Avenue, Suite 200
Topeka, KS 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
Email: kirk_redmond@fd.org

[30] *Welch* at 1266; See also *Hawkins v. United States*, 724 F.3d 915, 922 (7th Cir. 2013) (Rovner, dissenting from denial of rehearing) ("I believe that fairness is the lifeblood of our system of justice, and more specifically, justice requires the ability to rectify substantial uncontroverted judicial errors that cause significant injury. This is why in our anthropomorphization of Justice, she is wearing a blindfold, and not running shoes.").

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court on January 27, 2017, by using the CM/ECF system, which will send a notice of electronic filing to the following:

Jared.Maag
Assistant United States Attorney
Jared.Maag@usdoj.gov

James Brown
Assistant United States Attorney
James.Brown2@usdoj.gov

s/ Kirk C. Redmond
Kirk C. Redmond